**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAN GOLUBIEWSKI et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:22-CV-02078 |
| v. | (MEHALCHICK, J.) |
| AVTIVEHOURS, INC., et al., | |
| Defendants. | |

**MEMORANDUM**

Plaintiffs Dan Golubiewski and Steven Checchia (collectively, "Plaintiffs") individually and on behalf of a putative class, initiated this action against Defendant, Activehours, Inc. d/b/a/ EarnIn ("EarnIn") by filing a complaint asserting violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), the Loan Interest and Protection Law ("LIPL"), the Consumer Discount Company Act ("CDCA"), and the Truth-in-Lending Act ("TILA"). (Doc. 1; Doc. 18). Presently before the Court is EarnIn's motion to dismiss Plaintiffs' amended complaint. (Doc. 22). For the foregoing reasons, EarnIn's motion to dismiss will be **GRANTED**. (Doc. 22).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs initiated this action by filing a complaint on December 30, 2022. (Doc. 1). On August 25, 2023, Plaintiffs filed the operative amended complaint. (Doc. 18). In their amended complaint, Plaintiffs allege that EarnIn unlawfully charges interest disguised as "discretionary tips" or "optional fees" in exchange for cash advances in violation of the UTPCPL, LIPL, CDCA, and TILA. (Doc. 18). Specifically, Plaintiffs allege that EarnIn operates a lending app (the "EarnIn App") which provides consumers with cash advances

prior to payday. (Doc. 18, ¶¶ 27-28.). According to Plaintiffs, most users believe they must repay the advances on their next usual payday. (Doc. 18, ¶ 30-31, 99-102, 137). However, the advances are non-recourse, meaning EarnIn cannot force a user to repay the advance through legal action. (Doc. 18, ¶¶ 93-94, 107-108).

Users can either receive a "standard" or "expedited" advance through the EarnIn App. (Doc. 18, ¶ 32). The standard advance appears in the user's bank account within a few days, while the expedited advance arrives within minutes. (Doc. 18, ¶ 33). To obtain an "expedited advance," users must pay a "lightning speed fee," which ranges from $1.99 to $3.99. (Doc. 18, ¶ 34). Furthermore, before users can obtain a standard or an expedited advance, the EarnIn App requests payment of a "tip." The EarnIn App represents these tips as a way to "pay it forward" and "help" people by supporting EarnIn's product and keeping EarnIn up and running "for the rest of the community." (Doc. 18, ¶¶ 35-38). When the EarnIn App solicits the tip a default amount equal to 10% of the advance is pre-selected. (Doc. 18, ¶¶ 35, 38). If a consumer does not wish to pay a tip, the consumer must proactively change the default amount to $0.00. (Doc. 18, ¶ 39). Plaintiffs allege that the tips and fees do not cover anyone else's advances. (Doc. 18, ¶ 42). The true purpose of these tips and fees, according to Plaintiffs, is to compensate EarnIn for loaning money. (Doc. 18, ¶ 41). EarnIn's tips and fees are costly and yield APRs of more than 300%. (Doc. 18, ¶¶ 52-54). EarnIn never discloses the cost of its cash advances in terms of APR before, during, or after a loan transaction, which results in consumers failing to understand the true cost of EarnIn's cash advance product. (Doc. 18, ¶¶ 59-60).

On September 11, 2023, EarnIn filed a motion to dismiss Plaintiffs' first amended complaint and a brief in support of its motion. (Doc. 22; Doc. 23). On October 2, 2023,

Plaintiffs filed a brief in opposition to EarnIn's second motion to dismiss. (Doc. 27). On October 16, 2023, EarnIn filed a reply brief. (Doc. 28). On October 26, 2023, Plaintiffs filed an unopposed motion for leave to file a surreply in opposition to EarnIn's second motion to dismiss, which the Court granted on November 3, 2023. (Doc. 30; Doc. 31). On November 6, 2023, Plaintiffs filed a surreply to EarnIn's second motion to dismiss. (Doc. 31). On November 11, 2023, EarnIn filed a motion for leave to file a supplemental brief to Plaintiffs' surreply, which the Court granted on November 17, 2023. (Doc. 32; Doc. 33). On November 17, 2023, EarnIn filed a supplemental brief in response to Plaintiffs' surreply. (Doc. 34). On February 12, 2024, this matter was reassigned to the undersigned District Judge. The Court conducted oral argument concerning the pending motion to dismiss on April 12, 2024. Accordingly, the motion to dismiss is ripe for disposition.

**II.     MOTION TO DISMISS STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

4

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.   DISCUSSION**

EarnIn argues that all Counts in Plaintiffs' amended complaint fail to state a claim upon which relief can be granted. (Doc. 23). The Court addresses the sufficiency of each Count as follows.

   A.   VIOLATIONS OF THE LIPL AND THE CDCA

EarnIn argues that the LIPL claim should be dismissed because neither the tips nor expedited fees that EarnIn receives from consumers constitute "interest" within the meaning of Section 201 of the LIPL. (Doc. 23, at 14-19). Similarly, EarnIn submits that the tips and fees are not "charges" within the meaning of the CDCA. (Doc. 23, at 14-19). In opposition, Plaintiffs maintain that EarnIn's tips and fees are subject to both the LIPL and the CDCA. (Doc. 27, at 11-12).

Two statutes, the LIPL, 41 Pa. Stat. §§ 101-605, and the CDCA, 7 Pa. Stat. §§ 6201-6221, address lending activity. The LIPL sets a maximum interest rate of 6% for most loans below $50,000. 41 Pa. Stat. § 201. Meanwhile, the CDCA also sets a limit of 6% for a broader range of charges beyond interest. *See* 7 Pa. Stat. § 6203(A). It provides that "no person shall ... make [ ] loans or advance[ ] money on credit, in the amount or value of ... [ ]$25,000[ ] or less, and **charge, collect, contract for or receive interest … which aggregate in excess** of the interest that the lender would otherwise be permitted by law to charge." 7 Pa. Stat. § 6203(A) (emphasis added). "The LIPL sets 'the maximum lawful rate of interest' that may be charged in Pennsylvania at six percent annual simple interest.'" *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC* ("*NCAS II*"), 948 A.2d 752, 758 (Pa. 2008). However, the CDCA "caps not

5

only 'interest' but also the amount of 'discount, bonus, fees, fines, commissions, charges, or other considerations.'" *NCAS II*, 948 A.2d at 758. In other words, the CDCA applies more broadly than the LIPL. *See NCAS II*, 948 A.2d at 758-59. ("The CDCA, therefore, regulates costs associated with a loan more broadly than does the LIPL."). When Congress enacted the lending statutes, it did so to protect "borrowers 'against extortionate interest charges' for 'loans of comparatively small amounts.'" *Petro v. Lundquist Consulting Inc.*, No. 22-3051, 2024 WL 467542, at *1 (3d Cir. Feb. 7, 2024) (citing *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 978 A.2d 1028, 1036 (Pa. Commw. Ct. 2009)).

1. **The CDCA**

According to EarnIn, Plaintiffs' CDCA claim fails because the tips and fees are not "charges" subject to the CDCA's 6% limit on aggregate fees. (Doc. 28, at 3-4); s*ee* 7 Pa. Stat. § 6203(A). Plaintiffs allege that EarnIn's tips and fees are governed by the CDCA as "'interest and any type of other or additional charge or charges that aggregate in excess of six percent,' regardless of whether a charge is imposed on the amount actually loaned or advanced." (Doc. 18, ¶ 78). The parties accordingly focus heavily on two related analogous cases, *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, ("*NCAS I*") 931 A.2d 771 (Pa. Commw. Ct. 2007), *aff'd*, 948 A.2d 752 (Pa. 2008) from the Pennsylvania Commonwealth Court and *NCAS II*, 948 A.2d 752 from the Pennsylvania Supreme Court, which affirmed *NCAS I*.

In *NCAS I*, a cash advance center charged a monthly participation fee, which when included with its annual interest rate, raised the aggregate charges above the CDCA and LIPL 6% limit. *NCAS I*, 931 A.2d at 779. The parties disagreed about whether the monthly participation fee, which "[wa]s charged regardless of whether any amount [wa]s loaned or advanced under the Agreement rather than on the 'amount actually loaned or advanced,'"

6

should be included in the calculation of aggregate fees subject to the CDCA. *NCAS I*, 931 A.2d at 779. The Court held that the monthly fees should be included in calculating the aggregate charges because "the Monthly Participation Fee is a *necessary condition* before Cash Advance Centers provides a credit advance and is paid *in connection with any advance*. It is a charge *inextricably related* to the 'amount actually loaned or advanced.'" *NCAS I*, 931 A.2d at 779 (emphasis added). In *NCAS II,* the Pennsylvania Supreme Court affirmed the lower court's decision. *NCAS II,* 948 A.2d at 762. While the Court in NCAS II did not comment extensively on the lower court's "inextricably related" reasoning, it came to the same conclusion, holding that "the proviso 'on the amount actually loaned or advanced' attaches quite logically" to the phrase "interest that the lender would otherwise be permitted by law to charge." *NCAS II,* 948 A.2d at 760-762; s*ee* 7 Pa. Stat. § 6203(A).

This Court finds that taken together, *NCAS I* and *NCAS II* stand for two complementary propositions: (1) that a charge must be "inextricably related" to the advance to be subject to the CDCA; and (2) that the "interest, discount, bonus, fees, fines, commissions, charges, or other considerations" need not be "on the amount actually loaned or advanced." *See NCAS I,* 931 A.2d at 779; *NCAS II,* 948 A.2d at 760-762. These two propositions are not at odds, as Plaintiffs assert. (Doc. 31, at 2). A charge that is inextricably related to the advance does not require that the charge be "on" the amount loaned. *Cf. NCAS II,* 948 A.2d at 760-762. For instance, in *NCAS I* and *NCAS II*, the monthly fee was *required* to participate in the service, thus linking it, inextricably, to the advance. *NCAS I,* 931 A.2d at 779. The monthly charge was a flat fee and applied regardless of the amount advanced, so it was not a fee *on* the advance itself. *NCAS I,* 931 A.2d at 779. In other words, the charge was not on the loan amount, but was still a necessary condition to participation in the advance

7

program. *NCAS I*, 931 A.2d at 779. Here, Plaintiffs acknowledge in their amended complaint that the tips and fees are not a necessary condition to receiving an advance or using EarnIn's services. (Doc. 18 ¶¶ 136-139). Plaintiffs allege that the tips are discretionary, and users can manually choose how much, if at all, to tip. (Doc. 18 ¶¶ 136-139, 144). Regarding the "lightning speed fee," Plaintiffs attempt to distinguish it by alleging that "it is a mandatory charge users must pay to obtain an expedited advance." (Doc. 18, ¶ 90). However, Plaintiffs concede that participation in the expedited service is entirely optional; that the standard speed provides the same advance without the extra fee; and that users can choose whichever option they prefer. (Doc. 18, ¶¶ 32-34). Only if users manually choose the expedited advance does the "lightning speed fee" apply. (Doc. 18, ¶¶ 32-34). Thus, EarnIn's tips and fees are not subject to the CDCA's 6% limit on aggregate charges. *See NCAS II,* 948 A.2d at 760-762. Accordingly, EarnIn's motion to dismiss the CDCA claim is **GRANTED**. (Doc. 22).

2. The LIPL

Regarding the LIPL claim, EarnIn argues that tips and fees do not constitute "interest" because they are discretionary and not a percentage of the advance. (Doc. 23, at 15). Plaintiffs respond that the "tips and fees qualify as 'interest,' which refers to the "compensation fixed by agreement or allowed by law for the use or detention of money[.]" (Doc. 27, at 11-12) (citing Black's Law Dictionary, Loan (7th ed. 1999)).

LIPL itself does not define "interest." *See* 41 Pa. Stat. §§ 101-605. The parties again rely on analogous case law to determine the meaning of the term "interest" and disagree about how one case, *Mazaika v. Bank One, Columbus, N.A.* ("*Mazaika I*"), applies. (Doc. 23, at 15; Doc. 27, at 14 n.5); *see* 653 A.2d 640, 646 (Pa. Super. Ct. 1994), *rev'd,* 680 A.2d 845 (Pa. 1996). EarnIn claims that *Mazaika I* held that to be considered interest, a charge must be a percentage

8

of the amount borrowed. 653 A.2d at 646. Plaintiffs correctly point out that this definition of interest was overruled by *Bank One, Columbus, N.A. v. Mazaika* ("*Mazaika II*"). (Doc. 27, at 14 n.5); 680 A.2d 845, 846 (Pa. 1996). In any event, the *Mazaika* line of cases is inapplicable here, as those cases dealt not with LIPL, but with the National Bank Act and an Ohio lending statute, two completely different laws than the one at issue here. (Doc. 23, at 15; Doc. 27, at 14 n.5); *see* 680 A.2d at 846. Therefore, this Court must consider the meaning of interest in the LIPL statute, which states "the maximum lawful rate of interest *for the loan or use* of money[. . . ] shall be six per cent per annum. 41 Pa. Stat. § 201 (emphasis added). This Court understands the phrase "for the loan or use of money," 41 Pa. Stat. § 201, to be materially similar to the CDCA's phrase "on the amount actually loaned or advanced," 7 Pa. Stat. § 6203(A), and therefore, subject to the same interpretation. *See NCAS I*, 931 A.2d at 779; *NCAS II,* 948 A.2d at 760-762. Under LIPL, a charge must also be a necessary condition for the advance to constitute interest subject to LIPL. *NCAS I*, 931 A.2d at 779 (holding that "on the amount actually loaned or advanced" requires a necessary connection between the charge and the advance). Therefore, for the same reasons that the tips and fees are not CDCA charges because they are not necessary conditions to the paycheck advances, they are not "interest" subject to the LIPL 6% limit. *See NCAS I*, 931 A.2d at 779. Accordingly, EarnIn's motion to dismiss the LIPL claim is **GRANTED**. (Doc. 22). Plaintiffs' LIPL claim is **DISMISSED**. (Doc. 18).

    B.    <u>Violation of the UTPCPL</u>

The parties dispute whether Plaintiffs sufficiently state a claim under the UTPCPL. (Doc. 23, at 12; Doc. 27, at 20). Specifically, EarnIn argues that Plaintiffs have failed to state a UTPCPL claim because (1) Plaintiffs have not stated a claim under the CDCA or LIPL,

9

which is required to state a UTPCPL claim; and (2) Plaintiffs have not pled justifiable reliance. (Doc. 28, at 5, 12). Plaintiffs respond that they have stated a CDCA and LIPL claim and that they sufficiently alleged justifiable reliance by alleging that "[EarnIn] engaged in deceptive acts, manners, or processes of trade" which caused "Plaintiffs [to] engage [] in detrimental activity." (Doc. 18, ¶¶ 32-42, 142-144; Doc. 27, at 20).

The UTPCPL acts as Pennsylvania's Consumer Protection Law, seeking to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (quoting 73 Pa. Stat. Ann. § 201–3). The statute "is designed to protect the public from fraud and deceptive business practices." *Pirozzi v. Penskie Olds–Cadillac–GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. Ct. 1992). It provides a private right of action for "[a]ny person who purchases ... goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" because of the seller's unfair or deceptive practices. 73 P.S. § 201-9.2(a). To maintain a private right of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008). A plaintiff must also show that she suffered "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). "For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently." *Seplow v. Closing Pro, Inc.,* No. CV 23-3628, 2024 WL 649260, at *5 (E.D. Pa. Feb. 15, 2024). Further, allegations of a CDCA or LIPL violation do not constitute a *per se* violation of the UTPCPL.

10

*See Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 995 A.2d 422, 441 (Pa. Commw. Ct. 2010) ("A review of the provisions of the UTPCPL fail to establish that a violation of either the CDCA or the LIPL constitutes a *per se* violation of the UTPCPL").

EarnIn submits that the UTPCPL claim must be dismissed because (1) Plaintiffs have not pled justifiable reliance and (2) Plaintiffs have not stated a claim under the CDCA pr LIPL. (Doc. 28, at 5). As explained *supra*, Plaintiffs have not sufficiently alleged a CDCA or LIPL claim. However, even if they had, this Court also agrees with EarnIn that Plaintiffs have not sufficiently alleged justifiable reliance. Plaintiffs allege that "EarnIn engaged in deceptive acts, manners, or processes of trade" by representing that Plaintiffs were paying tips "to help the community" when the "tips" were actually interest and supporting EarnIn's operation costs. (Doc. 18, ¶¶ 32-42, 142-144). These averments amount to allegations that EarnIn misrepresented the purpose of the "tips" to deceive users into paying more for EarnIn's services under false pretenses, sufficient to meet the first element of justifiable reliance – that Defendants engaged in wrongful conduct or misrepresentation. *See Yocca, Inc.*, 854 A.2d at 438 (finding that a plaintiff must show that defendant engaged in "wrongful conduct or representation" to state a claim under the UTPCPL.).

Plaintiffs, however, have not met the next element of justifiable reliance, that they engaged in detrimental activity and suffered harm as a result of that reliance. *Hunt*, 538 F.3d at 221. Plaintiffs allege that they paid tips under false pretenses, "with Golubiewski believing that paying a tip would induce Earn[I]n to continue lending money to him and others, and Checchia believing that paying a tip would induce Earn[I]n to increase the amount of advances that were available." (Doc. 18, ¶ 142). However, these averments are not sufficient to show justifiable reliance because Plaintiffs have not alleged that if not for the alleged

misrepresentations, Plaintiffs would have acted differently. *See Hunt*, 538 F.3d at 227 (declining to find justifiable reliance when "[a]lthough [a plaintiff] alleges he and his putative class members 'relied on a presumption'" of truth regarding a defendant's representations about market efficiency, "he leaves us guessing as to how his knowledge [of the true market efficiency] would have changed his conduct."). Without more, these allegations do not sufficiently show that Plaintiffs would not have left a tip or purchased the expedited service had EarnIn been transparent about where the money would go. *See Doherty v. Allstate Indem. Co.,* No. CV 15-05165, 2016 WL 5390638, at *6 (E.D. Pa. Sept. 27, 2016) (dismissing UTPCPL claims when plaintiff purchasers failed to allege justifiable reliance because allegations that defendants misrepresented an insurance policy, without more, leaves the court unclear as to "how their knowledge of the actual terms or nature of the insurance policy would have affected their decision to purchase the policy in the first place"). Accordingly, since Plaintiffs have not pled a CDCA or LIPL claim nor have they sufficiently alleged justifiable reliance, they have failed to state a UTPCPL claim. See *Hunt*, 538 F.3d at 227. EarnIn's motion to dismiss the UTPCPL claim is **GRANTED**. (Doc. 22).

    C.    <u>Violation of the TILA</u>

EarnIn submits that Plaintiffs' TILA claim in the amended complaint should be dismissed because (1) the tips and fees are not "finance charges" and (2) Plaintiffs fail to plead facts establishing EarnIn as a "creditor" within the meaning of TILA. (Doc. 23, at 19-23). In response, Plaintiffs contend that EarnIn's advances qualify as credit and its tips and fees qualify as financial charges under TILA. (Doc. 27, at 15-19).

TILA regulates "the relationship between lenders and consumers ... by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing*

*Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "TILA generally requires that a creditor in a consumer transaction disclose, among other things: (1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quote omitted). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights in a manner that is reasonably understandable and noticeable to the consumer. *See Krieger*, 890 F.3d at 432-33. A consumer may file suit under TILA against a creditor that fails to comply with the relevant requirements. *See* 15 U.S.C. § 1640(e).

Congress has defined "finance charge" under TILA as "all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). *See Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239 (2004). The phrase "incident to" as it relates to the extension of credit requires a necessary connection between the credit and the charge. *See Pfennig*, 541 U.S. at 239-41 ("this Court has recognized that the phrase 'incident to or in conjunction with' implies some *necessary* connection between the antecedent and its object") (citing *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 403, n. 9 (1996)). There is some ambiguity about the degree of relatedness required between the charge and the credit for the charge to be classified as a "finance charge." *See Pfennig*, 541 U.S. at 241 (reversing a case-by-case approach to determining whether certain overcharge fees are finance charges in favor of a unilateral exclusion of overcharge fees from the finance charge definition and stating "the phrase 'incident to' does not make clear whether a substantial (as opposed to a remote)

13

connection is required.").

Here, the tips and fees are not a condition to credit. (Doc. 18 ¶¶ 136-139).[1] In fact, by alleging that Plaintiffs sometimes accidentally paid tips or fees and that Plaintiffs obtained advances without paying tips and fees, Plaintiffs acknowledge that the tips and fees were not a necessary condition to credit. (Doc. 18 ¶¶ 136-139, 144). This Court agrees with EarnIn that the optional tips and fees are not finance charges under TILA, which requires that the fees be a *necessary* condition for credit. *See Pfennig*, 541 U.S. at 239-41 (holding that a necessary connection is required for fees to be considered finance charges under TILA). Accordingly, EarnIn's motion to dismiss the TILA claim is **GRANTED**. (Doc. 22).

D.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.' " *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Plaintiffs' claims are dismissed because Plaintiffs have not shown that the tips and fees were a necessary condition to receive an advance nor have Plaintiffs alleged justifiable reliance. Therefore, the Court will grant Plaintiffs leave to file a second amended complaint in an attempt to cure the deficiencies outlined herein in regard to these claims. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

---

[1] When dismissing the CDCA and LIPL claims discussed *supra*, this Court explained that the tips and fees are not a necessary condition to EarnIn's advances because they are discretionary. The same reasoning applies to the TILA analysis.

## IV. CONCLUSION

For the foregoing reasons, EarnIn's motion to dismiss (Doc. 22) will be granted as to all claims. Plaintiffs' amended complaint will be dismissed and Plaintiffs are granted 21 days to file an amended complaint in accordance with this Memorandum.

An appropriate Order follows.

BY THE COURT:

Dated: September 16, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**